## BAMBERGER TRANSP. CO. v. PUBLIC SERVICE COMMISSION et al.

No. 7103.   Decided March 29, 1949.   (204 P. 2d 163.)

See 42 C. J., Motor Vehicles, sec. 68; 9 Am. Jur. 484. Validity of regulations requiring certificate of public convenience and necessity, note, 175 A. L. R. 1335.

*Skeen,. Thurman & Worsley* and *Ray, Quinney & Nebeker,* all of Salt Lake City, for plaintiff.

*Grover A. Giles,* Atty. Gen., and *Calvin L. Rampton,* of Salt Lake City, for defendant.

McDONOUGH, Justice.

By certiorari, plaintiff seeks review of an order of the Public Service Commission whereby plaintiff was required to cease certain stub runs until it files an application and upon hearing establishes public convenience and necessity therefor, a *stub run* being defined as any run which does not operate the entire distance between the terminals of plaintiff company, namely, Ogden and Salt Lake City.

In 1927, plaintiff was granted certificate of convenience and necessity No. 288 to operate busses between Salt Lake City and Ogden, with the privilege of pick-up and discharge of passengers at intermediate points except between Salt Lake City and Centerville which segment of the route of travel was then served by the Utah Light and Traction Company. In 1938, when the electric line of the traction company was abandoned, the plaintiff was granted permission to make stub runs between Salt Lake City and Centerville, but at the end of 20 days plaintiff requested the commission to discontinue such stub runs on the ground that Bamberger Electric Railroad Company and the plaintiff's through bus service provided adequate service in that area. Four through bus runs were made by plaintiff between Salt Lake City and Ogden each day until 1942 when the Office of Defense Transportation requested removal of bus service, and upon the assurance from the commission "that it would be permitted to reinstate said runs following the end of the war emergency", such bus service was discontinued. The stock of plaintiff company has been and is controlled by Bamberger Railroad Company, which operates an electric railroad between Salt Lake City and Ogden.

On July 20, 1944, the commission rescinded the 1942 order, authorized plaintiff to resume operations as a common carrier of passengers between Salt Lake City and Ogden and intermediate points, and further ordered that plaintiff "shall resume such operations as soon as the necessary

authority is secured from the Office of Defense Transportation." On September 10, 1945, plaintiff obtained a letter of authorization from the Office of Defense Transportation to resume motor operations. Due to the fact that under authorization of the Public Service Commission, plaintiff had disposed of the busses which it had in operation prior to 1942, and the further fact that new busses on order since 1945 were not delivered until October 1946, motor operations were not resumed until Februry 2, 1947. In July 1946 the Bountiful Transportation Company applied to the commission for a certificate of convenience and necessity to serve the Bountiful-Centerville residential area by busses to Salt Lake City. Plaintiff opposed the granting of a certificate to the Bountiful Transportation Company, and an extensive hearing was held on this application.

On January 22, 1947, the commission granted to Bountiful Transportation Company, a certificate of convenience and necessity No. 756 for motor bus transportation in the Bountiful area to Salt Lake City, whereby the company was required to use the Val Verda highway on some of its runs. It was not able to inaugurate its service until February 10, 1947. Plaintiff did not petition for review of such order of the commission.

On February 2, 1947, or 8 days prior to the date when Bountiful Transportation Company began its bus service, the plaintiff inaugurated not only the service which it had rendered between Salt Lake City and Ogden prior to 1941, but it instituted stub runs which operated between Salt Lake City and Centerville. No application was filed with the commission for such new and different service by plaintiff, nor did the commission order such service instituted. Plaintiff merely filed its schedules, whereby it announced that it was inaugurating beginning February 2, 1947, eight round trips between Salt Lake City and Ogden and six stub runs to Bountiful and Farmington from Salt Lake City.

The Bountiful company then filed a protest with the commission as to this extended service of Bamberger company. At an informal hearing before the commission, the commission decided to allow both companies to operate under their schedules for a test period during which period the commission would check the schedules of the respective companies. On May 25, 1947, plaintiff filed a new schedule for these stub runs which had been instituted by it. Stub runs out of Ogden were discontinued. After checking on the bus runs of the two companies, on June 25, 1947, the commission ordered plaintiff to cease operation of stub runs which made pickups or discharges within the area described above as being within the area served by Bountiful Transportation Company. It was further ordered that Bamberger Transportation Company

"institute no further stub runs making pickups or discharges within the area described above as being the area served by Bountiful Transportation Company until such time as after due notice it is made to appear to this Commission that such runs meet public convenience and necessity and are not unnecessary duplicitous to the service operated by Bountiful Transportation Company."

Plaintiff applied for rehearing in which application it claimed the right to operate such stub runs under its certificate of convenience; and it also claimed that it was not given a proper hearing. Upon denial of the application it applied to this court for certiorari.

Plaintiff contends that the commission's order was arbitrary in that plaintiff was not accorded a hearing prior to entry of such order and that the order is based upon findings which are without support.

The first contention raises, first the question of whether plaintiff was entitled to a hearing in the premises, and secondly, whether it was accorded a proper hearing. Plaintiff points out that in 1938 when the electric line of Utah Light and Traction Company was abandoned and plaintiff was granted permission to serve the Centerville area, it then had under its certificate of convenience and necessity

a right to serve all the area between Salt Lake City and Ogden, and hence, that the order here assailed in effect modified such certificate without giving plaintiff a hearing. But it must be borne in mind that prior to the discontinuance of bus operations in 1942, plaintiff at no time, except for a 20 day trial period in 1938, had served the Centerville area by stub runs from Salt Lake City, and that under the assailed order the servicing of such area or any of the intermediate points between its terminals in connection with its through runs is in no way restricted. Also to be remembered is the fact that at the time the order under review was entered, Bountiful Transportation Company had been granted authority to serve the area in question. We are thus confronted by a situation where a carrier proposes, by the filing of a schedule, to institute new and additional service into an area where its certificate authorizes it to operate, which area is to be served by a competing carrier. In such situation might the Public Service Commission, without a hearing, order that the proposed additional service shall not be inaugurated until upon a hearing appropriate showing of public convenience and necessity therefor is made? We are of the opinion that such authority is vested in the commission.

Section 76-5-17, U. C. A. 1943, provides, inter alia:

"The commission is vested with power and authority, and it shall be its duty, to supervise and regulate all common motor carriers and to fix, alter, regulate and determine just, fair, reasonable and sufficient rates, fares, charges and classifications; to regulate the facilities, accounts, service and safety of operations of each such common motor carrier, to regulate operating and time schedules so as to meet the needs of any community, and so as to insure adequate transportation service to the territory traversed by such common motor carriers, and so as to prevent unnecessary duplication of service between these common motor carriers, and between them and the lines of competing steam and electric railroads; and the commission may require the co-ordination of the service and schedules of competing common carriers by motor vehicles or electric and steam railroads; * * *."

Under the quoted section, the commission is authorized to regulate the service and the operating and time schedules of all motor carriers so as to "meet the needs of any community" and to insure adequate transportation to the territory traversed, and to prevent unnecessary duplication of service between such carriers. Of course, the mere granting of the powers therein enumerated does not of itself resolve the question of whether a hearing is required before the exercise thereof. Were the commission contemplating restrictions on operating schedules theretofore in force and effect in pursuance of a valid certificate authorizing service in the area, or changing rates, fares or classifications, a full hearing would doubtless be required. But here the situation is in all substantial respects the same as though the defendant certificate holder had been for some time serving the area in precisely the same way as it did serve it after inauguration of its service, and plaintiff had started its competing stub run service without specific authority from the commission. If the commission in such situation must permit the competing carriers to continue operations under their schedules until notice and hearing, in many instances a financially weak carrier might be detrimentally affected in its ability to adequately serve the public need.

Since the stub run service proposed under plaintiff's filed schedules was an extension of service previously rendered, and since a mere inspection of such schedules and those of defendant carrier would reveal that the proposed stub runs by plaintiff would be duplicitous of the services contemplated by defendant carrier, the commission might properly order that plaintiff's stub runs shall not be inaugurated until upon application of plaintiff and hearing thereon it would be shown that public convenience and necessity therefor, would require inauguration of such proposed extension of service by plaintiff. To that effect is *Gilmer* v. *Public Utilities Comm.*, 67 Utah 222, 247 P. 284, 290. In that case this court held that the

mere fact that the commission did not in express terms prohibit a carrier from increasing the number of vehicles or the number of trips, did not authorize the carrier to increase such service without the consent of the commission. It was there held that the state has the right to regulate the use of highways, and that no one has an inherent right to use the public highways as a private business enterprise. Consequently, the use of the highways by a carrier is subject to regulation and control by the state. It was also held that when it appears to the commission that an increase in a number of trips by one carrier will seriously affect the ability of another carrier serving part of the same territory or some territory beyond the area in question, to render service, the commission may interfere to prevent such result. It was there stated:

"It is argued, however, that, if the commission is permitted to alter or amend former orders, etc., it may result in serious injury to the common carrier affected, since it may prevent him from using his equipment for which he may have expended large sums of money. We have already shown that a common carrier using the public highways may not do so without permission from the commission, and that the commission will determine the extent and character of the service that may be necessary and that the carrier may render. That being so, the carrier always knows the nature and number of vehicles he may employ in the service. *We have also held that, in case he has entered upon the service and desires to increase it, he, before doing so, must apply to and obtain permission from the commission.* He thus always is advised respecting the use of equipment, and hence cannot be injured. In using the public highways as a common carrier, he must, however, always do so subject to the right of the commission to regulate him in the use he makes of them. * * *" (Italics added.)

The commission did not forthwith disapprove the proposed stub run schedules filed by plaintiff. Defendant carrier protested the proposed schedule of plaintiff, and at an informal hearing at which plaintiff was represented, defendant carrier made a prima facie showing that the service inaugurated by plaintiff would seriously affect the Bountiful company's ability to serve the area. The com-

mission thereupon ordered both carriers to operate the stub runs for a test period of 20 days. During such period inspectors of the commission checked the number of passengers carried by defendant carrier and the gross revenue realized from such service. The inspectors also checked and reported on the disbursements during such period. They likewise made a four-day comparative check on the number of passengers carried by each carrier, and reported the result to the commission. Thereafter, and after communications from both carriers relative to such reports, the order complained of was issued, the commission concluding that the service proposed by plaintiff was unnecessarily duplicitous and that if the runs ordered discontinued were permitted, they would seriously affect the financial ability of defendant carrier to continue to render adequate service.

Plaintiff argues that the recited findings and conclusions are not supported by what it describes as an inadequate investigation. Especially does it complain of the alleged failure to give plaintiff an opportunity to present to the commission evidence of the adverse effect on the finances of plaintiff by reason of discontinuance of the stub runs. In answer to each contention it may be stated that if the public convenience and necessity of the area served by the discontinued stub runs would reasonably require the inauguration of such service, or if the total area served by plaintiff would be adversely affected by the lack of such proposed service, the way is open for plaintiff to properly bring such facts before the commission by *application* for institution or extension of service. We, of course, in this proceeding, cannot inquire into the order not before us for review whereby a certificate of convenience and necessity was issued to the defendant carrier. The right of the Bountiful company to operate in the area under schedules approved by the commission, must be regarded in this proceeding as fully established. Whether plaintiff should be permitted to duplicate such service, the commission concluded depends upon a showing of public convenience and necessity. In this, we think the commission did not err.

The order complained of was not in excess of the authority of the commission, nor was it arbitrary or capricious, as contended by plaintiff. It is therefore affirmed. Costs to defendant Bountiful Transportation Company.

PRATT, C. J., and WADE and LATIMER, JJ., concur.

WOLFE, Justice (concurring).

I concur. I would emphasize first the fact that the plaintiff after it had run the stub service between Salt Lake City and Centerville for twenty days in 1938 asked that the same be discontinued on the ground that the Bamberger Electric Railroad Company and the through bus service provided by the plaintiff adequately served the area. It is not necessary at this time to determine whether such was an abandonment of that service so as to require the Bamberger Transportation Company again to apply to furnish that service or whether it was only a permitted suspension of the service which could be resumed at will. Second: When, in 1947, the Bountiful Transportation Company was granted the right to serve the same territory which the plaintiff had requested that it be not required to serve with bus service against the protest of the plaintiff, the question of whether that territory was adequately served only by the through bus service of plaintiff and the service rendered by the Bamberger Electric was answered in favor of the Bountiful Transportation Company. Since there was no appeal such decision must stand. Whether the territory requires further service by a stub line of plaintiff or whether it is now adequately served by plaintiff's through bus service and the Bamberger Electric Railroad Company *and* Bountiful's service, is to be determined when and if the plaintiff makes application to reinstate its stub service.